SEDGWICK LLP
CAROLINE H. MANKEY   (Bar No. 187302)
*caroline.mankey@sedgwicklaw.com*
ERICA R. GRAVES   (Bar No. 301785)
*erica.graves@sedgwicklaw.com*
801 South Figueroa Street, 19th Floor
Los Angeles, CA  90017-5556
Telephone: 213.426.6900
Facsimile: 877.547-6580

Attorneys for Plaintiffs Penthouse Global Media, Inc. and General Media Communications, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENTHOUSE GLOBAL MEDIA, INC., a Delaware corporation, GENERAL MEDIA COMMUNICATIONS, INC., a New York corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SKWS ENTERPRISES, INC., a California corporation, FACTORY NIGHTCLUB, form of business entity unknown, JOE VILLA, an individual, NATHAN GOLLER, an individual, and DOES 1 through 50,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114);**<br><br>**2. FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A));**<br><br>**3. TRADEMARK DILUTION (15 U.S.C. § 1125(C));**<br><br>**4. FALSE ADVERTISING (15 U.S.C. § 1125(A));**<br><br>**5. COMMON LAW TRADEMARK INFRINGEMENT;**<br><br>**6. COMMON LAW UNFAIR COMPETITION;**<br><br>**7. UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200);**<br><br>**8. TRADEMARK DILUTION (CAL. BUS. & PROF. CODE § 14247);**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE COMPLAINT

1. Plaintiffs Penthouse Global Media, Inc., General Media Communications, Inc. and/or their predecessors (collectively, "Plaintiff" or "Penthouse") have been using the PENTHOUSE trademark since 1969 in connection with the iconic men's magazine, as well as a wide array of related merchandise and services, including nightclubs, lounges, bars and restaurants. Penthouse owns numerous registered PENTHOUSE trademarks and service marks in multiple classes, as well as multiple unregistered marks and pending applications for registration (the "PENTHOUSE Marks").

2. Defendants SKWS Enterprises, Inc., Factory Nightclub, Joe Villa and Nathan Goller (collectively, "Defendants") have taken the liberty of unilaterally appropriating the "Penthouse" name and trademark and operating a nightclub in West Hollywood, California, which they have called "Penthouse West Hollywood," "PentHouse DayClub Sundays," "PH Day Club – Luxury Penthouse," "Penthouse Day Club" and "PH West Hollywood," all of which infringe on Penthouse's exclusive rights to use the PENTHOUSE Marks in connection with nightclub services. Despite Penthouse's repeated notices, and Defendants' repeated promises, Defendants have failed to cease their use of the PENTHOUSE Marks. For these reasons, Penthouse hereby complains against Defendants and allege as follows:

## PARTIES

3. Plaintiff Penthouse Global Media Inc. is a Delaware corporation with its principal place of business in Chatsworth, California.

4. Plaintiff General Media Communications, Inc. is a New York corporation with its principal place of business in Chatsworth, California.

5. Plaintiff is informed and believes that Defendant SKWS Enterprises, Inc. ("SKWS") is a California business entity, with its principal place of business at 652 N. LaPeer Drive, West Hollywood, California, 90069. Plaintiff is informed and believes that SKWS does business as The Factory and/or Factory Nightclub, and

that it operates, maintains and/or controls the nightclub known as "Penthouse West Hollywood," "PentHouse DayClub Sundays," "PH Day Club – Luxury Penthouse," "Penthouse Day Club" and "PH West Hollywood."

6. Plaintiff is informed and believes that Defendant Factory Nightclub is a California business entity, form unknown, with its principal place of business at 652 N. LaPeer Drive, West Hollywood, California, 90069. Factory Nightclub has been and is listed along with Defendant Joe Villa in various online databases as the registrant of the domains www.penthousewesthollywood.com and www.phwesthollywood.com. Plaintiff is further informed and believes that Defendant Factory Nightclub participates in the operation, maintenance and/or control of the nightclub known as "Penthouse West Hollywood," "PentHouse DayClub Sundays," "PH Day Club – Luxury Penthouse," "Penthouse Day Club" and "PH West Hollywood."

7. Plaintiff is informed and believes that Defendant Joe Villa is an individual residing in, and doing business in, the county of Los Angeles, California. Mr. Villa has been and is listed along with Defendant Factory Nightclub in various online databases as the registrant of the domains www.penthousewesthollywood.com and www.phwesthollywood.com. Plaintiff is further informed and believes that Defendant Joe Villa participates in the operation, maintenance and/or control of the nightclub known as "Penthouse West Hollywood," "PentHouse DayClub Sundays," "PH Day Club – Luxury Penthouse," "Penthouse Day Club" and "PH West Hollywood."

8. Plaintiff is informed and believes that Defendant Nathan Goller is an individual residing in, and doing business in, the county of Los Angeles, California. Plaintiff is informed and believes, based on public records, that Mr. Goller is the owner of Defendant Factory Nightclub and the owner of the real property where Factory Nightclub and the nightclub known as "Penthouse West Hollywood," "PentHouse DayClub Sundays," "PH Day Club – Luxury Penthouse," "Penthouse

Day Club" and "PH West Hollywood," are located at 661 North Robertson Boulevard and 652 North LaPeer Drive, West Hollywood, California 90069. Plaintiff is further informed and believes that Defendant Nathan Goller participates in the operation, maintenance and/or control of the nightclub known as "Penthouse West Hollywood," "PentHouse DayClub Sundays," "PH Day Club – Luxury Penthouse," "Penthouse Day Club" and "PH West Hollywood."

9. Plaintiff is informed and believes that Defendants Villa and Goller directly committed the infringement described herein or, alternatively, that they directly controlled the infringing conduct described herein, intentionally induced it or failed to prevent it, and, as such, that they are contributorily liable for the infringement. Plaintiff is further informed and believes that Defendants Villa and Goller have an apparent or actual partnership with the other infringing Defendants and have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing nightclub and websites. As such, Defendants Villa and Goller are vicariously liable for the infringement.

10. Plaintiff is informed and believes that Defendants Does 1 through 25, inclusive, are improperly using Plaintiff's registered trademarks (as hereinafter described) to offer or promote Defendants' nightclub and related services without Plaintiff's consent, or are otherwise liable for secondary trademark infringement. The true names, whether corporate, individual, or otherwise of Does 1 through 25, inclusive, are presently unknown to Plaintiff and, therefore, these Does are being sued by fictitious names, and Plaintiff will seek leave to amend this Complaint to include the true names and capacities when the same have been ascertained.

11. Plaintiff is informed and believes that Defendants Does 26 through 50 are other parties not yet identified who have infringed Plaintiff's trademarks, have contributed to the infringement of Plaintiff's trademarks, or have engaged in one or more of the wrongful acts alleged herein, and as such are liable for contributory trademark infringement. The true names, whether corporate, individual, or

1  otherwise of Does 26 through 50, inclusive, are presently unknown to Plaintiff and,
2  therefore, these Does are being sued by fictitious names, and Plaintiffs will seek
3  leave to amend this Complaint to include the true names and capacities when the
4  same have been ascertained.

5      12.    Plaintiff is informed and believes that at all times relevant to this
6  action, each of the Defendants was the agent, affiliate, officer, director, manager,
7  member, principal, alter-ego, and/or employee of the remaining Defendants and was
8  at all times acting within the scope of such agency, affiliation, alter-ego relationship
9  and/or employment, and actively participated in or subsequently ratified and
10 adopted, or both, each and all of the acts or conduct alleged herein with full
11 knowledge of each and every violation of Plaintiff's rights and the damages to
12 Plaintiff proximately caused thereby.

## JURISDICTION AND VENUE

14     13.    This Court has jurisdiction over the claims relating to trademark rights
15 under 15 U.S.C. §§ 1114, 1121(a) and 1125(a), and 28 U.S.C. §§ 1331 and 1338.

16     14.    This Court has jurisdiction over the Defendants and venue is properly
17 laid in this district under 28 U.S.C. § 1391(b) and (c) in that all of the Defendants
18 reside in and/or regularly transact business in this district, and a substantial part of
19 the events giving rise to the claim occurred here.

## FACTUAL BACKGROUND

21     15.    Penthouse is the publisher and owner of *Penthouse* magazine and the
22 owner of the famous registered and unregistered PENTHOUSE Marks throughout
23 the world.  Since 1969, Penthouse and its predecessors and licensees have
24 consistently published its well-known *Penthouse* magazine domestically and
25 internationally,  By virtue of its popularity, *Penthouse* magazine has generated many
26 millions of dollars of sales and Penthouse has broadly expanded the scope of
27 products and services that it offers under the PENTHOUSE Marks, including,
28 without limitation, exploitation of content via various platforms of entertainment

83251614v1

5

media, including online, calendars, lingerie, jewelry, shoes, adult toys, apparel, trading cards, energy drinks, wristwatches and clocks, night clubs, restaurant and bar services, cigars, candles, and other related adult entertainment services. Penthouse owns multiple federal trademark registrations, and has filed multiple other applications for registration, of the PENTHOUSE Marks.

16. Penthouse's registered marks relating to nightclub, bar and related services include, without limitation: PENTHOUSE (Reg. No. 4808739 for nightclub services and other services); PENTHOUSE (Reg. No. 3779465 for bar and restaurant services); PENTHOUSE (Reg. No. 3007070 for entertainment services and night club services); THE PENTHOUSE CLUB (Reg. No. 2810417 for entertainment services and restaurant, night club and bar services); PENTHOUSE (Reg. No. 4782367 for distilled spirits, prepared alcoholic cocktail, wine). Copies of the Certificates of Registration of these PENTHOUSE Marks are attached hereto as **Exhibit A**.

17. In or about June 2014, it came to Penthouse's attention that Defendants were operating a nightclub at 661 North Robertson Boulevard in West Hollywood, California, 90069, called the "Penthouse West Hollywood" and that they were operating a website promoting the nightclub at www.penthousewesthollywood.com.

18. Penthouse looked up the registrant of www.penthousewesthollywood.com in the database maintained by BetterWhois.com, Inc. and determined that the registrant was Defendant Joe Villa and the registrant's organization was Defendant Factory Nightclub, located at 652 N. LaPeer Drive, West Hollywood, California, 90069. Penthouse is informed and believes, and based thereon alleges, that the address 652 N. LaPeer Drive, West Hollywood, California, 90069, is another address for the same building that has the street address 661 North Robertson Boulevard in West Hollywood, California, 90069, where the Penthouse West Hollywood nightclub was being operated.
///

19. On or about June 12, 2014, Penthouse sent a cease and desist letter to Mr. Villa by Federal Express and by email to joe@factorynightclub.com. Among other things, Penthouse notified Defendants of their exclusive trademark rights in the PENTHOUSE Marks and demanded that Defendants cease using the PENTHOUSE Marks in connection with their nightclub.

20. On or about July 9, 2014, counsel for Factory Nightclub responded to Penthouse's cease and desist letter to Mr. Villa, conveyed Factory Nightclub's offer to cease and desist from using the domain www.penthousehollywood.com, and denied that Factory Nightclub was using any of the PENTHOUSE Marks as the name of any business operated by Factory Nightclub. Thereafter, Defendants ceased using the website www.penthousewesthollywood.com and instead began operating a website known as www.phwesthollywood.com, which did not cure their infringement of the PENTHOUSE Marks, and continued to use the PENTHOUSE Marks in connection with their nightclub and related services, as well as their website and social media pages.

21. Over the course of the next approximately two years, the parties or their counsel exchanged correspondence regarding Defendants' unauthorized use of the PENTHOUSE Marks, including the following:

22. On April 3, 2015, Penthouse notified counsel for Defendants that the Defendants' uses of the PENTHOUSE Marks on the www.phwesthollywood.com website and on Facebook were unauthorized infringements of the PENTHOUSE Marks and demanded that Defendants cease and desist from such uses and provide an accounting of Defendants' revenues from the infringing uses.

23. On April 7, 2015, Penthouse notified counsel for Factory Nightclub that Defendants' infringing uses of the PENTHOUSE Marks were continuing and gave specific examples of the infringing uses, including both text and images from Defendants' website www.phwesthollywood.com in which the PENTHOUSE Marks were being used as part of Defendants' logo and to describe Defendants'

1  branded events.

2     24.    On April 7, 2015, counsel for Factory Nightclub informed Penthouse that Factory Nightclub was "in the process of removing all uses of the name 'Penthouse' from the website" and that it was preparing an accounting for its "Penthouse" event at the nightclub. However, Defendants thereafter failed to cease their unauthorized use of the PENTHOUSE Marks.

     25.    On or about January 14, 2016, counsel for Penthouse's predecessor sent a further letter to counsel for Defendants via email regarding Defendants' continued and willful infringement of the PENTHOUSE Marks.

     26.    Despite having been notified repeatedly of Penthouse's rights in and to the PENTHOUSE Marks since 2014, Defendants have continued, and are continuing, to operate a nightclub and "day club" at 661 North Robertson Boulevard in West Hollywood, California, 90069, which they have called, and are continuing to call, various names incorporating Plaintiff's PENTHOUSE Marks, or confusingly similar names, including, without limitation, "PentHouse DayClub Sundays," "PH Day Club – Luxury Penthouse," "Penthouse Day Club" and "PH West Hollywood."

     27.    Defendants also are continuing to promote their nightclub using Plaintiff's Marks in advertising and on social media, including Instagram (www.instagram.com/phdayclub), Facebook (www.facebook.com/PHDayClub), and Twitter (www.twitter.com/phdayclub).

     28.    For example, even as of May 12, 2016, a Twitter page believed to be operated by or on behalf of Defendants contained the following logo and text:

///
///
///
///
///
///

### Penthouse Dayclub

@phdayclub
Penthouse Day Club - Exclusive invite-only party every Sunday || 2pm-8pm||Located at 661 N. Robertson Blvd., West Hollywood, California 90069
661 N. Robertson Blvd.
phwesthollywood.com

29. A Facebook page believed to be operated by or on behalf of Defendants shows the following photograph posted on December 20, 2015, with the caption "Penthouse Life Style!"



30. An Instagram feed believed to be operated by or on behalf of Defendants also shows the logo using the PENTHOUSE Marks and contains the following logo and text:



PentHouse DayClub Sundays

|Daytime-Playtime Every SUNDAY| Doors Open at 2PM! Located →661 N.Robertson Blvd. West Hollywood CA 90069← #PenthouseDayClub #PHDayClub #SundayFunday www.phwesthollywood.com

31. Based on Defendants' continued use of the PENTHOUSE Marks in connection with their nightclub and related services after being notified of Penthouse's trademark rights, Defendants' use of the PENTHOUSE Marks is knowing and willful.

**FIRST CLAIM FOR RELIEF**

(Infringement of Registered Trademark under 15 U.S.C. § 1114)

32. Plaintiff incorporates the allegations of each foregoing paragraph as though fully set forth herein.

33. Defendants are using the PENTHOUSE Marks in commerce in connection with their nightclub and related services and in the advertising and promotion to the general public of their nightclub and related services. Defendants are using both the exact word that comprises the PENTHOUSE Marks, as well as the confusingly similar "PH," which has the exact same meaning as "PENTHOUSE" and, as such, substantiates a claim of similarity of trademarks.

34. Defendants never sought or received Plaintiffs' authorization to use the PENTHOUSE Marks in connection with their nightclub and related services.

35. Defendants' use of the PENTHOUSE Marks is likely to cause and/or has actually caused confusion in the marketplace by creating the false and mistaken impression that Defendants' nightclub and/or the websites or social media pages on which the nightclub and related services are being marketed are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse.

36. Penthouse is informed and believes, and based thereon alleges, that Defendants' purpose in using the PENTHOUSE Marks was and is to deceive, mislead and confuse customers and the public into believing that Defendants' nightclub and/or the websites or social media pages on which the nightclub and related services are being marketed are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse, and to trade on the substantial and historical fame, notoriety, reputation and goodwill associated with the PENTHOUSE Marks.

37. Defendants' use of the PENTHOUSE Marks violates the Lanham Act, 15 U.S.C. § 1114.

38. Defendants' use of the PENTHOUSE Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse in the diminution of value and goodwill of the PENTHOUSE Marks, and in their impairment to serve as trademarks, for which Penthouse has no adequate legal remedy.  Accordingly, Penthouse is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

39. As a direct and proximate result of Defendants' wrongful conduct, Penthouse has been and will continue to be damaged by, without limitation, loss of profit, and diminution in the value of the PENTHOUSE Marks and in its reputation

83251614v1

1  and goodwill, in an amount to be proven at trial.

2      40.    Defendants' wrongful use of the PENTHOUSE Marks was and 3 continues to be knowing, deliberate, willful, fraudulent, and without extenuating 4 circumstances. Penthouse is entitled to recover three times the amount of actual 5 damages or profits, or statutory damages, and attorney's fees and costs incurred in 6 this action, and Defendants' profits from its infringement of the PENTHOUSE 7 Marks pursuant to 15 U.S.C. § 1117(a) - (c).

### SECOND CLAIM FOR RELIEF

(False Designation of Origin Under 15 U.S.C. § 1125(a))

10      41.    Plaintiff incorporates the allegations of each foregoing paragraph as 11 though fully set forth herein.

12      42.    The PENTHOUSE Marks are distinctive of goods and services 13 originating with Penthouse. The Defendants' unauthorized use of the PENTHOUSE 14 Marks, and designations such as "PH" that are identical in meaning to the 15 PENHOUSE Marks, is likely to cause and, on information and belief, has actually 16 caused confusion in the marketplace by creating the false and mistaken impression 17 that Defendants' nightclub and related services are affiliated, connected or 18 associated with Penthouse, or that they originate with, or are sponsored or approved 19 by Penthouse.

20      43.    Defendants' use of the PENTHOUSE Marks has caused and, if not 21 enjoined, will continue to cause, irreparable and continuing harm to Penthouse in the 22 diminution of their value and goodwill as trademarks, and in their impairment to 23 serve as a trademarks, for which Penthouse has no adequate legal remedy. 24 Accordingly, Penthouse is entitled to provisional, preliminary and permanent 25 injunctive relief to compel cessation of all infringing and otherwise harmful 26 conduct.

27      44.    As a direct and proximate result of Defendants' wrongful conduct, 28 Plaintiffs have been and will continue to be damaged by, without limitation, lost

sales and diminution in the value of the PENTHOUSE Marks and in its reputation and goodwill, in an amount to be proven at trial.

45. Defendants' wrongful use of the PENTHOUSE Marks is knowing, deliberate, willful, fraudulent, and without extenuating circumstances. Penthouse is therefore entitled to recover three times the amount of its actual damages and attorney's fees and costs incurred in this action, as well as Defendants' profits from their infringement of the PENTHOUSE Marks.

## THIRD CLAIM FOR RELIEF

(Trademark Dilution Under 15 U.S.C. § 1125(c))

46. Plaintiff incorporates the allegations of each foregoing paragraph as though fully set forth herein.

47. The PENTHOUSE Marks are famous and distinctive in that they are widely recognized by the general consuming public as a designation of Penthouse as the source of the goods or services represented by the PENTHOUSE Marks.

48. Defendants' use of the PENTHOUSE Marks, and designations such as "PH" that are identical in meaning to the PENTHOUSE Marks, impairs the distinctiveness of the famous PENTHOUSE Marks and, as such, causes dilution by blurring.

49. Defendants' use of the PENTHOUSE Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse in the diminution of their value and goodwill as trademarks, and in their impairment to serve as a trademarks, for which Penthouse has no adequate legal remedy. Accordingly, Penthouse is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

50. Defendants' wrongful use of the PENTHOUSE Marks commenced after October 6, 2006. Defendants' wrongful use of the PENTHOUSE Marks was and continues to be knowing, deliberate, willful, fraudulent, and without extenuating

circumstances.  Penthouse is therefore entitled to recover three times the amount of its actual damages and attorney's fees and costs incurred in this action, as well as Defendants' profits from their infringement of the PENTHOUSE Marks.

## **FOURTH CLAIM FOR RELIEF**

(False Advertising Under 15 U.S.C. § 1125(a))

51. Plaintiff incorporates the allegations of each foregoing paragraph as though fully set forth herein.

52. Defendants have used the PENTHOUSE Marks in the commercial advertising or promotion for their nightclub and related services, including but not limited to their advertising and promotions online and on social media, such as Facebook, Twitter and Instagram.  Said use is a false statement of fact as to the nature, characteristic and qualities of Defendants' nightclub and related services in that it conveys the false message to consumers that their nightclub and related services are operated by, affiliated or associated with, or sponsored by Penthouse.

53. Defendants' representations are commercial advertising in that they are speech related solely to the economic interests of Defendants and their audience, by Defendants who are in commercial competition with Penthouse within the nightclub industry, for the purpose of influencing consumers to frequent Defendants' nightclub and purchase their services, and sufficiently disseminated to the relevant purchasing public online and via Defendants' social media pages.

54. Defendants' false statements implicating Penthouse's involvement with Defendants' nightclub and related services is likely to deceive and/or has actually deceived a substantial segment of its audience.

55. Defendants knew or should have known that their statements were false or likely to mislead consumers.  Defendants' deception is material, in that it is likely to influence its customers' decision to frequent Defendants' nightclub.

56. Defendants caused their false statements to enter interstate commerce in various ways, including through online advertising and promotion.

83251614v1

57. Penthouse licenses the PENTHOUSE Marks for use in connection with several competing nightclubs throughout the United States. Defendants directly compete with Penthouse and its licensees in connection with the operation of these nightclub and related services.

58. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been and will continue to be damaged by, without limitation, lost sales and diminution in Penthouse's ability to compete with the Defendants, a diversion of profits, and/or a lessening of the goodwill associated with the PENTHOUSE Marks.

59. Defendants' wrongful use of the PENTHOUSE Marks is knowing, deliberate, willful, fraudulent, and without extenuating circumstances. Penthouse is therefore entitled to recover three times the amount of its actual damages and attorney's fees and costs incurred in this action, as well as Defendants' profits from their infringement of the PENTHOUSE Marks.

## **FIFTH CLAIM FOR RELIEF**
(Common Law Trademark Infringement)

60. Plaintiff incorporates the allegations of each foregoing paragraph as though fully set forth herein.

61. Defendants are using the PENTHOUSE Marks in commerce in connection with their nightclub and related services and in the advertising and promotion to the general public of their nightclub and related services. Defendants are using both the exact word that comprises the PENTHOUSE Marks, as well as the confusingly similar "PH," which has the exact same meaning as "PENTHOUSE" and, as such, substantiates a claim of similarity of trademarks.

62. Defendants never sought or received Plaintiffs' authorization to use the PENTHOUSE Marks in connection with their nightclub and related services.

63. Defendants' use of the PENTHOUSE Marks is likely to cause and/or has actually caused confusion in the marketplace by creating the false and mistaken

83251614v1

impression that Defendants' nightclub and/or the websites or social media pages on which the nightclub and related services are being marketed are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse.

64. Penthouse is informed and believes, and based thereon alleges, that Defendants' purpose in using the PENTHOUSE Marks was and is to deceive, mislead and confuse customers and the public into believing that Defendants' nightclub and/or the websites or social media pages on which the nightclub and related services are being marketed are affiliated, connected or associated with Penthouse, or that they originate with, or are sponsored or approved by Penthouse, and to trade on the substantial and historical fame, notoriety, reputation and goodwill associated with the PENTHOUSE Marks.

65. Defendants' use of the PENTHOUSE Marks violates the common law of the State of California.

66. Defendants' use of the PENTHOUSE Marks has caused and, if not enjoined, will continue to cause, irreparable and continuing harm to Penthouse in the diminution of value and goodwill of the PENTHOUSE Marks, and in their impairment to serve as trademarks, for which Penthouse has no adequate legal remedy. Accordingly, Penthouse is entitled to provisional, preliminary and permanent injunctive relief to compel cessation of all infringing and otherwise harmful conduct.

67. As a direct and proximate result of Defendants' wrongful conduct, Penthouse has been and will continue to be damaged by, without limitation, loss of profit, and diminution in the value of the PENTHOUSE Marks and in its reputation and goodwill, in an amount to be proven at trial.

///
///
///

## SIXTH CLAIM FOR RELIEF

(Common Law Unfair Competition)

68. Plaintiff incorporates the allegations of each foregoing paragraph as though fully set forth herein.

69. Defendants' use of the PENTHOUSE Marks, and designations such as "PH" that are identical in meaning to the PENTHOUSE Marks, has the effect of passing off their nightclub and related services as being produced or authorized by Penthouse.

70. Defendants' misconduct constitutes unfair competition in that it offends established public policy and is immoral, unethical, oppressive, unscrupulous and injurious to consumers.

71. As a direct and proximate result of Defendants' wrongful conduct, Penthouse has been and will continue to be damaged by, without limitation, loss of profit, and diminution in the value of the PENTHOUSE Marks and in their reputation and goodwill, in an amount to be proven at trial.

72. The acts of unfair competition alleged herein were committed with oppression, fraud and malice. Specifically, Defendants used the PENTHOUSE Marks with knowledge that Penthouse owns the exclusive right to such use. Defendants' continuing use of the PENTHOUSE Marks was unauthorized and caused consumer confusion, resulting in continuing injury to Penthouse.

73. Penthouse requests the imposition of exemplary damages pursuant to California Civil Code § 3294.

## SEVENTH CLAIM FOR RELIEF

(Unfair Competition in Violation of

California Business & Professions Code § 17200, *et seq.*)

74. Plaintiff incorporates the allegations of each foregoing paragraph as though fully set forth herein.

///

75. Defendants' unauthorized use of the PENTHOUSE Marks, and designations such as "PH" that are identical in meaning to the PENTHOUSE Marks, constitutes unlawful, unfair or fraudulent business acts or practices within the meaning of California Business & Professions Code § 17200.

76. Defendants' wrongful conduct has caused and, if not enjoined, will continue to cause irreparable and continuing harm to Penthouse, for which it has no adequate legal remedy.

## EIGHTH CLAIM FOR RELIEF

(Trademark Dilution in Violation of

California Business & Professions Code § 14247, *et seq.*)

77. Plaintiff incorporates the allegations of each foregoing paragraph as though fully set forth herein.

78. The PENTHOUSE Marks are famous and distinctive in California in that they are widely recognized by the general consuming public of this state as a designation of Penthouse as the source of the goods or services represented by the PENTHOUSE Marks.

79. Defendants began using the PENTHOUSE Marks without authorization from Penthouse after the PENTHOUSE Marks had become famous.

80. Defendants' unauthorized use of the PENTHOUSE Marks, and designations such as "PH" that are identical in meaning to the PENTHOUSE Marks, is likely to cause dilution of the famous PENTHOUSE Marks.

81. Defendants' unauthorized use of the PENTHOUSE Marks has caused and, if not enjoined, will continue to cause irreparable and continuing harm to Penthouse, for which it has no adequate legal remedy.

82. Defendants' dilution of the PENTHOUSE Marks was willful, as evidenced by their continuing use of the PENTHOUSE Marks after being advised of Penthouse's exclusive trademark rights, entitling Penthouse to an award of up to three times Defendants' profits from, and up to three times all damages suffered by

reason of Defendants' wrongful use of the PENTHOUSE Marks, pursuant to Section 14250 of the California Business & Professions Code.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs PENTHOUSE GLOBAL MEDIA, INC. and GENERAL MEDIA COMMUNICATIONS, INC. pray for relief as follows:

1. The damages sustained by Plaintiff and Defendants' profits;
2. Up to three times the damages sustained by Plaintiff and three times the Defendants' profits;
3. Three times the amount of damages or profits, whichever is greater; or statutory damages of up to $2 million per counterfeit mark used by Defendants;
4. Exemplary damages;
5. Injunctive relief prohibiting Defendants from any future unauthorized use of the PENTHOUSE Marks;
6. An order that Defendant file and serve a report under oath within 30 days of the issuance of injunctive relief indicating the manner in which it has complied with the injunctive relief, pursuant to 15 U.S.C. § 1116;
7. Plaintiff's costs in this action and reasonable attorney's fees and expenses;
8. For such additional and further relief as this Court deems just and proper.

Dated: May 19, 2016                SEDGWICK LLP

                                By: */s/ Caroline H. Mankey*
                                    Caroline H. Mankey
                                    Erica R. Graves
                                    Attorneys for Plaintiffs
                                    PENTHOUSE GLOBAL MEDIA, INC.
                                    and GENERAL MEDIA
                                    COMMUNICATIONS, INC.

# DEMAND FOR JURY TRIAL

Plaintiffs Penthouse Global Media, Inc. and General Media Communications, Inc. hereby demand a trial by jury on all issues triable by jury.

Dated: May 19, 2016            SEDGWICK LLP

By: */s/ Caroline H. Mankey*
    Caroline H. Mankey
    Erica R. Graves
    Attorneys for Plaintiffs
    PENTHOUSE GLOBAL MEDIA, INC.
    and GENERAL MEDIA
    COMMUNICATIONS, INC.